## THE HEIRS OF BRYANT *vs.* STEARNS.

1. Where land descends to six heirs, and some of them, without the concurrence of the others, transfer to a third person one undivided seventh part of the whole, it is not erroneous, on an application for partition under the statute, to divide the land into six equal parts only, and proceed to a partition without noticing the claim of such third person.

2. The statute requires, that in a proceeding for partition, the surveyor and chain-carriers shall be sworn prior to the survey, and that the survey shall be made in the presence of the commissioners, but these facts need not appear *in the return.* The legal presumption is, that the commissioners have done their duty, until the contrary is shown.

3. The mere fact that one of several coparceners, or tenants in common, is a lunatic, does not divest the jurisdiction conferred by the statute in proceedings for partition.

4. The Judge of an Orphans' Court has jurisdiction of an application for partition under the act of 1803 (Clay's Dig. 386.) The jurisdiction vests in him *as Judge,* and whether he be called the Judge of the County Court, or the Judge of the Orphans' Court, is wholly immaterial.

5. A proceeding under the act of 1803 for partition is not such a judgment, sentence or decree, as will sustain a writ of error. *Certiorari* is the only process by which it can be brought under review.

Error to the Orphans' Court of Tallapoosa.

Wm. H. STEARNS petitioned the Judge of the Orphans' Court for partition of certain lands, alleging that he was entitled to one sixth part equally with five others, who as heirs at law held by descent from William H. Bryant. One of the five, William Bryant, is stated to be a lunatic. On the filing of the petition, an order was made that three persons, naming them, be appointed commissioners to divide the land, unless objections be made before the Judge on the first Monday in August thereafter. On the first Monday in August, two of the heirs appeared and objected to the petition, but what their objections were does not appear. On their motion, however, the application was continued until the first Monday in September. On the first Monday in September, a guardian *ad litem* was appointed to defend for the lunatic, who denied the allegations of the petition; but the facts and issues being found in favor of the petitioners, the three individuals, previously named, were

appointed and a commission issued to them to make partition according to the prayer of the petition. They were duly sworn, proceeded to make the partition, and divided the land described into six equal parts, and, after having given the requisite notice to all the heirs, proceeded by ballot to allot to each his share in severalty, and made return to the Judge under their hands and seals, showing the manner in which they had executed the commission, and the share allotted to each. Two of the heirs filed objections to the return of the commissioners, each of which was overruled by the Judge of the Orphans' Court, and the partition confirmed and ordered to be recorded. The objections urged below are severally noticed in the opinion of the court, and the overruling of them is the error here assigned.

McLESTER, for plaintiffs in error.

MORRIS, contra.

DARGAN, J.—The first assignment of error is, that the land should have been divided into seven instead of six shares, in consequence of an agreement under seal, by which Needham Bryant and General J. Bryant, two of the heirs, and William F. Stearns and Joel Mayberry, who had intermarried with two of the daughters of William Bryant, deceased, transfered to Bodicia, the widow, one seventh part of all the real and personal estate of her deceased husband. There are six heirs, but the agreement is signed by two only, and the husbands of two of the females, who are entitled as heirs and distributees to participate in the division of the estate. It is very clear that this agreement can operate only on the shares or interest of the two heirs that have signed it, and the other four are entitled each to one sixth part. The agreement, however, may be binding personally on the husbands of the two daughters who are parties to it—yet it cannot have the effect of vesting in the widow any title to the land, to the prejudice of the rights and interests of their wives, who are entitled by descent each to a sixth part, but who have not by any act of theirs conveyed any share of their interest. The agreement, then, can only operate on the interest of two of the heirs, if it can operate to give her title to any portion. The four heirs

are entitled to one sixth each. This being the condition of the legal rights of the parties, we can see no objection to a partition into six equal shares, as Bodicia, the widow, may assert her rights, notwithstanding the partition, either against the shares of the two heirs, Needham and General J. Bryant, or personally against all the parties to the agreement, as she may see fit, or be entitled. But if it be admitted that she could demand one seventh from those whose interest in the land may be bound by the agreement, or that she could sue all of the obligors for not allotting to her one seventh part, yet as the interest in the land of four of the heirs is not in any manner bound by it, we think the partition is well made, without noticing her rights under the agreement, or making her a party to the proceedings, leaving her to assert her claim, if any she has, as she may see proper.

2. The second assignment of error is, that the return made by the commissioners of the division of the land does not show that the surveyor and chain-carriers were sworn before they proceeded to survey the land. It is true that the statute requires that surveyors and chain-carriers shall be sworn that they will well and truly perform their respective duties, before the land is surveyed, and it is made the duty of the commissioners, previous to the survey, to have this oath administered. (Clay's Dig. 386, § 4.) But the question is, whether it is indispensably necessary that the return of the commissioners should show this fact. The statute requires that the commissioners shall transmit the writing containing their appointment and their oath or affirmation of office, certified by the person administering the same, and the map and field book, and also their accounts, to the Judge from whom they received their appointment, or in case of his death, resignation or removal, then to any Judge of the same court, who, after inspecting the same, shall order such instruments to be recorded. Clay's D. 388, § 8. It is evidently the duty of the commissioners, before they proceed to survey the land, to administer the oath required to the surveyor and chain-carriers; and if such oath was not administered, the court to which a return of the commissioners is made should set it aside. But the question raised by the assignment of errors is, whether the return is defective, because it does not show on its face that such oath was admin-

istered. The statute that requires the oath to be administered also prescribes what the return shall contain, to-wit, the instrument of writing containing their appointment, their oath of office properly certified, and their map and field book. But it is not required that their return on its face should show that the surveyor and chain carriers were sworn. Shall the return and partition for this be set aside? The legal presumption must be, that the commissioners have discharged the duties required of them according to law, until the contrary appears, and we cannot infer that they have omitted so important a requirement in the absence of all proof. The law does not require that their return should show affirmatively that the oath was administered. It is therefore valid, though this fact be not stated in the return, if in fact the oath required was administered to the surveyor and chain-carriers. The plaintiff, therefore, cannot object to the partition on the ground alone that the commissioners' return does not show that the oath was administered, but he must go further and show by proof that it had not been done. As no such proof was offered, this assignment of error is unavailing.

The same answer must be given to the third assignment of error, which is, that the return does not show that the survey was made in the presence of the commissioners. It would be difficult to perceive how they could make the partition, having a due regard to the quantity and quality of each share, unless they were present and directed the survey. But the return need not state positively that they were present, directing the survey; this will be presumed, until the contrary is shown by proof.

The fourth error assigned is, that the time, place and manner of the allotment are not certified as directed by the statute. We have examined the return, and cannot pronounce it defective. The notice required of the time and place of the allotment was given, and the allotment was made by ballot in the manner prescribed by the statute, and the whole is certified by the commissioners. We can perceive no defect in the manner in which the share of each was allotted or set apart.

3. The fifth and sixth assignments of error question the jurisdiction of the Judge of the Orphans' Court to order the partition, because William Bryant, one of the heirs, was a lunatic,

and it is urged that this deprives the court of jurisdiction.—The language of the act of 1803 is, that any person being a coparcener, joint tenant or tenant in common of any tract or tracts of land within this State, may at any time apply to one or more of the Judges of the Circuit Courts of this State, or to any Judge of the County Court, wherein such lands may lie, for a partition of such tract or tracts of land, who shall ascertain the number of shares or parts in which such tract or tracts of land are held by the coparceners, joint tenants or tenants in common, and shall nominate three persons, not interested in said land, to make partition, &c. It is very certain that a coparcener, joint tenant or tenant in common is entitled to partition and to have his share alloted to him in severalty, altho' his co-tenant be a lunatic; and the jurisdiction of the Judge does not depend on the character of the co-tenants, but on the fact that the land is held jointly by parceners, joint tenants or tenants in common, and that some one of them, able to sue, makes application for partition in the manner prescribed by the act. When such an application is made, showing that the lands are held jointly by parceners, joint tenants or tenants in common, the jurisdiction of the Judge over the subject is complete, and he must proceed according to law to make the partition.

4. It is also contended, that the Judge of the Orphans' Court cannot claim to exercise this jurisdiction under the act of 1803, but obtains his jurisdiction from the act of 1806, the proceedings under which are different from those contemplated by the act of 1803. We think that the Judge of the Orphans' Court, as it is sometimes called in our statutes, has jurisdiction under the act of 1803, under which these proceedings were had. It is true that the language in this act is, that the application may at any time be made to any one or more of the Judges of the Circuit Courts, or to the Judge of the County Court of the county in which the lands may lie; but the Judge of the County Court and of the Orphans' Court is the same person in this State, and when he is spoken of in reference to business pertaining to a Court of Probate, he is frequently called the Judge of the Orphans' Court; when in reference to business not peculiarly belonging to a Court of Probate, he is styled the Judge of the County Court. But as the same person is Judge of

both courts, whether the jurisdiction be confered on him by the name of the Judge of the County or Orphans' Court is immaterial; it vests in him as Judge, and therefore he can legally exercise the powers confered on him by this statute, whether he be styled the Judge of the one court or the other, and if he proceeds in conformity with the act, his sentence, judgment or decree is conclusive. The act of 1806 does seem to contemplate a course of proceeding different from the act of 1803, but it certainly does not in any manner repeal the act of 1803, nor restrict or limit the jurisdiction of the Judge of the County Court; whether it enlarges the jurisdiction may well be doubted. It provides for partition in only two cases: where the tenants hold as devisees, or by descent, and some of them are under age, the Judge of the Orphans' Court may make partition in the manner pointed out in that act. As to whether partition can be made under the act of 1803, when one of the tenants is under age, *it is not necessary to express an opinion.* But when all the tenants are of full age, whether they hold by devise, by descent, or otherwise, they must hold either as coparceners, joint tenants, or tenants in common, and consequently any one of them is entitled to partition under this act.

5. Although we have examined the errors assigned, yet we come to the conclusion that the writ of error must be dismissed. A writ of error will lie to a final judgment or decree of the Circuit, County or Orphans' Court, but the proceedings, under the act of 1803 for the partition of land, cannot be said to be such a final judgment or decree, in the sense of that term, as authorises us to review it by a writ of error. It is true, it is of a judicial character, and is binding on the rights of the parties to the extent contemplated by the act. Yet the Judge does not sit as Judge of a court to which a writ of error may issue. For instance, if the application is made to one or more of the Judges of the Circuit Courts, it may be heard in vacation and decided in vacation, when the partition is completed. The proceedings may be ordered to be recorded in either the Circuit or County Court of the county in which the land lies. If the costs be not paid, the Judge himself issues an order to sell the land of the delinquent party for its payment. In such a case, should the proceedings be ordered to be recorded in the

County Court, to what court should we direct the writ of error? If to the Circuit Court, the clerk of that court could not certify the record, for there is no record of file in his court. If to the County Court, there is no judgment of the County Court. In the case supposed, we could not get the record before us by this process. The jurisdiction confered by the act is a special one, and the Judge who exercises it does not sit either as Judge of the Circuit or County Court, but, being Judge of the one or the other of those courts, he is clothed with authority to proceed and determine the matter according to the directions of the statute. The statute prescribes no mode by which these proceedings may be reviewed by an appellate court, and consequently a writ of error will not lie. The only process by which these procesdings can be reviewed and reversed, or affirmed, is by a writ of *certiorari*, which lies to review the acts and proceedings of any one exercising legal authority and pronouncing judgments or sentences, or decrees in the nature of judgments, if there be no other remedy provided by law by which their acts or judgments can be reviewed.

Let the writ of error be dismissed.