JACKSONVILLE, TAMPA & KEY WEST RAILWAY COMPANY, APPELLANT, VS. CHARLES S. ADAMS, AS ADMINISTRATOR OF THE ESTATE OF JOHN S. ADAMS, ET AL., APPELLEES.

1. Proceedings for the condemnation of land for railroad and canal purposes under the act of February 12th, 1885, as amended by that of June 8th, 1887, Chapters 3505, 3712, are in the Circuit Court in the exercise of its judicial powers, as a court of chancery, and not before the circuit judge as a commissioner, or special tribunal, or as distinct from the court.

2. An appeal lies to the Supreme Court from an order of the Circuit Court dismissing a proceeding instituted under the act as amended in 1887, for the condemnation of land for railroad purposes, although this statute is silent on the subject of an appeal.

Appeal from the Circuit Court for Volusia county.

STATEMENT.

The appellant instituted proceedings under the act of February 12th, 1885, Chapter 3595, as amended by the act of June 8th, 1887, Chapter 3712, p. 31 acts of 1885, and p. 82, acts of 1887, authorizing railroad and canal companies to condemn lands of private individuals for their use.

The fourth section of the amendatory act provides, *inter alia:* "The jury shall view the land described in the petition, hear the allegations of the parties, and shall appraise, ascertain and determine the value of each tract or parcel of land proposed to be taken with the value of the improvements thereon and each sepa-

rate estate therein and the damage that will be sus-
tained by the owner or owners by reason of the taking
thereof, and they shall fix the amount of the compen-
sation to be made to each of the owners thereof. A
majority of the jury may determine all matters before
them." The section then provides that the "said jury
shall, within ten days after viewing the land men-
tioned in the petition, file in the office of the Circuit
Court of the county in which the land lies," which is
the same office the petition for condemnation is filed
in, a report of their proceedings concerning the land,
setting forth their verdict as to the amount of compen-
sation awarded by them to the owner of each tract or
parcel.

The fifth section enacts that when such report has
been filed, either or any party to the proceeding may,
within ten days after the date of the filing of such re-
port, file with the clerk of such court his or their writ-
ten protest against the confirmation of such report,
setting forth the reason why the same should not be
confirmed, and it shall be the duty of the judge to hear
the parties and their witnesses, and determine the mat-
ter at as early a day as practicable; and should the
protesting party on such hearing show good cause why
such report should not be confirmed, the judge shall
refuse to confirm the same, and he shall order and
cause to be taken such further proceedings in the mat-
ter, not inconsistent with this act. Should, however,
the judge on such hearing, determine that no sufficient
cause has been shown why the report should not be

confirmed, or should no protest be filed as above provided, the judge shall make an order confirming the report, and on payment to the owner or owners of the land by the railroad or canal company of the amount awarded to him or them by the jury for the use of such land, or on payment thereof to the clerk of such court, subject to the order of the owner or owners, the order confirming the verdict of such jury "shall be entered of record on the chancery order book of said court, and it shall thereupon become a judgment and decree of said court," and the right to use such land shall thereupon vest in such corporation, its successors and assigns, and they shall have the right, etc.

The other facts are stated in the opinion.

Motion to dismiss Appeal.

*A. W. Cockrell & Son* for Motion.

The appellant instituted proceedings to condemn to its use appellees' lands, and pursued them to the stage of getting the report of a jury; the Judge of the Circuit Court refused to confirm the report, and refused to cause further proceedings, and dismissed the proceedings.

The appellant seeks, by appeal from these rulings of the judge, to bring them within the appellate jurisdiction of the Supreme Court.

The appellees insist that the appellate jurisdiction of this court, if it exists, which is denied, cannot, in this case on this record, be asserted by "*appeal.*"

The ruling sought to be appealed from, is as follows :

" The above styled case being submitted on the exceptions and protests of the above named defendants, and without evidence, and the court being fully advised, the exception and protests of defendant be and they are hereby sustained, and the confirmation of the report is refused, and the court refuses the motion to order further proceedings in this matter on the ground of the unconstitutionality of the law authorizing the same, and the compensation of the jury is fixed at $2 per diem each, and this case be and the same is hereby dismissed, and the defendants do recover and have judgment against the plaintiff for their costs, to all of which the plaintiff excepts, and thirty days is allowed plaintiff to perfect bill of exceptions.

" Ordered at Chambers, DeLand, Florida, this 10th day of August, A. D. 1891.

" JOHN D. BROOME, Judge, etc."

The statute, Ch. 3712, under which the condemnation proceedings were had, provides, sec. 4, p. 84, acts 1887, that the land-owner may file his written protest against the confirmation of the report of the jury; and makes it the duty of the judge to hear the parties and their witnesses; and further provides that if no protest be filed, or if no good cause against confirmation be

shown, that the report shall be confirmed, upon the payment by the corporation to the land-owner, or to the clerk subject to the order of the land-owner, of the amount so awarded to him by the report, and that *thereupon* "the order confirming the verdict of said jury shall be entered of record on the chancery order book of said court; and it shall, *thereupon*, become a judgment and decree of said court, and the right to use such lands shall thereupon vest in such corporation." If the ruling appealed from was in *fact* entered upon the chancery order book, as the judgment or decree of the court, there was no authority for such entry.

This is wholly unlike bastardy proceedings, from the final judgment of the Circuit Court in which an appeal to this court lies. The several tests applied in John D. C. vs. *ex rel.* Julia V. H., 16 Fla., 560, are each wanting: "The issue is *not* made up according to the rules and practice of the Circuit Court; and the trial is *not* had by jury in the same manner and after the same form as is provided for trials for other causes in that court. The judgment is *not* the judgment of the Circuit Court entered upon its minutes. The bond is *not* in the custody of the court, and the money thereon is *not* to be appropriated by the order of the court."

The statute under which the case at bar arose, authorizes the ruling of the judge to be entered upon the

minutes, and thereupon become a judgment and decree
of said court, *only* in case the verdict of the jury is
confirmed. It is not germane now to inquire whether
the Supreme Court has, *prior* to this entry as the judg-
ment or decree of the court, any relation by way of
supervisory jurisdiction, which may be called into ex-
ercise, over the proceedings instituted under Ch. 3712,
by mandamus, certiorari, prohibition, procedendo or
other writs, necessary or proper to the complete exer-
cise of its constitutional jurisdiction—sec. 5, Art. 5, of
the Constitution.

For the purposes of the argument now insisted on,
it suffices to show that in the absence of a confirmation
of the report or verdict of the jury, and the payment of
the award and the entry *consequent thereon* of the
rulings of the judge as the judgment or decree of the
*court*, there is no basis, constitutional or statutory,
upon which the supposed or actual jurisdiction of this
court may be invoked by way of "*appeal.*"

The jurisdiction, the *power* to *hear* and *determine*,
was vested in the *judge* and *not* in the court. Bryant
vs. Stearns, 16 Ala., 302. The special limited function
vested in the court, was, by an entry on its minutes,
*after* confirmation and payment, to vest the property
in the corporation. The constitutional appellate juris-
diction of the Supreme Court, sec. 5, Art. 6, extends
to circuit and county *courts*; this appellate jurisdic-
tion, unlike the appellate jurisdiction of the Circuit

Courts, can *not* be enlarged by the Legislature. Sec. 5, Art. 6.

But the statute does not contemplate an appeal by the petitioner, since as to it no judgment, *in any event*, is rendered requiring it to take the land condemned at the appraisement of the jury. It is optional with the corporation *after* the verdict is rendered, to impart finality to the proceedings, or to withhold finality therefrom under this statute, by paying, or withholding the payment of the money to the land-owner, or the clerk subject to his order, because no entry confirming the report of the jury becomes the judgment of the *court* until *such* voluntary payment.

In a word, if the verdict of the jury is *not* satisfactory to the corporation, it cannot become or be the basis of *the judgment or decree of the court.* At *no* stage is the proceeding *as to the corporation,* "*in invitum.*"

It is idle to contend that this statute, or the general statutes, sec. 1, act Feb. 10, 1832, sec. 1, Ch. 3008, allow to the corporation an appeal from the action of the judge or jury which can never become effective, never become the judgment or decree *of the court* unless it is made so by the voluntary act of the corporation, clothed as to this particular proceeding with a delegated sovereignty. Louisville, N. O. & T. vs. Ryan *et al.* (Miss.), 8 So. Rep. 173; s. c. 64 Miss, 399.

JANUARY TERM, 1892. 267

J. T. & K. W. Ry. Co. v. Charles S. Adams.—Argument of Counsel.

This court will dismiss such an appeal "*ex mero motu*," without any suggestion from counsel.

Protesting, for these reasons, that the Supreme Court has no jurisdiction of the case sought to be made by this appeal; and subject to such protest, the appellees submit that Ch. 3712 is unconstitutional.

The Constitution, sec. 29, Art. 16, provides as follows:

"No private property or right of way shall be appropriated to the use of any corporation or individual until full compensation therefor shall be first made to the owner, or first secured to him by deposit of money; which compensation, irrespective of any benefit from any improvement proposed by such corporation or individual, shall be ascertained by a jury of twelve men in a court of law of competent jurisdiction, as shall be prescribed by law."

As matter of *constitutional* law, therefore, the appellant, complaining of the action of the judge below declining to condemn to its use under these proceedings the land of appellees, the burden is upon it to show from these proceedings:

1. That full compensation has been paid to appellees, or secured to them by a deposit of money;

2. That this compensation was as to the amount thereof, irrespective of any benefit to accrue from the proposed improvement;

3. That this compensation was ascertained by a jury

of twelve men *in a court of competent jurisdiction;* and

4. That the constitutional rights of the appellees, in respect of these condemnation proceedings, were provided for and protected by *existing valid statutory legislation.*

There is absolutely nothing in this record to show that these constitutional prerequisites, or either of them, have been complied with.

The act of 1885, in force before the present Constitution went into effect, so far as the sections sought to be amended by the act of 1887 are concerned, was stricken down by the Constitution which went into effect January 1st, 1887.

The conflict between these sections of the act of 1885 and sec. 29, Art. 16 of the Constitution is obvious. The woof and warp of these sections thus in terms amended by the act of 1887, their entire structure, proceeded upon the theory that the property of the land-owner could, as was the law under the Constitution in force at the time, be divested by the act of *six commissioners*, had in conformity to that act, and confirmed by the Circuit *Judge.*

When, therefore, the Constitution which became operative in January 1887, in sec. 29, Art. 16, declared that the land-owner could not be *so divested* of his property, the act of 1885, as to these sections thus sought to be amended, was absolutely repealed. Farther enforcing this view, suppose condemnation proceedings

had been instituted, conducted and concluded under the act of 1885, after January 1, 1887, and before June 8, 1887, when Ch. 3712 was approved by the Governor, would any lawyer hesitate to affirm that such proceedings were wholly *without* legislation to support them?

If this be so, the act of 1887 as is shown by its title and by its terms, was merely amendatory of sections that had been *theretofore* repealed, sections *constitutionally* incapable of amendment, *not* the subject of *amendment*. L. & N. R. R. vs. City of E. St. Louis, 25 N. E. Rep., 962 ; s. c. 134 Ill., 656.

The act of 1887, therefore, which sought to amend sections having at that time no legal existence, was absolutely void.

Apart from the fact, however, that ch. 3712, the act of 1887, merely sought to amend sections which at the time had no legal existence, it is wholly invalid. The contention of the appellant, that the requirements of sec. 29, Art. 16, are met by the designation of jurors who are to act merely as a board of commissioners, is based upon the case of Cruger vs. Hudson River R. R., 12 N. Y., 190, decided in 1854. The Constitution of New York construed in this case is as follows : "When private property shall be taken for any public use, the compensation to be made therefor, when such compensation is not made by the State, shall be ascertained by a jury, or by not less than three commissioners appointed by a court of record, as shall be prescribed by

law." Judge Johnson, delivering the prevailing opinion of the court, in discussing whether the appraisers, a majority of whom ascertained in that case the value of the property condemned, are a "jury" within the meaning of the Constitution, said: "If that term had not acquired a peculiar meaning when applied to this class of cases by prior legislative usage, and had not been continually in use in that special sense up to the time of the convention by which the Constitution was formed, I should, without any doubt resting upon my mind, be of the opinion that the peculiar tribunal provided by this act was not a jury. That term, when spoken of in connection with trial by jury in the second section of the same article, imports a jury of twelve men whose verdict is to be unanimous. Such must be its acceptation to every one acquainted with the history of the common law, and aware of the high estimation in which that institution, so constituted, has for so long a period been held. But from an examination of the statutes upon this subject of taking private property for public purposes, during a period of twenty years immediately preceding the sitting of the convention, it is apparent that the term "jury" had been in frequent use as descriptive of a body of jurymen, drawn in the ordinary mode of drawing juries, to whom was committed the appraisement of damages for private property taken for public uses, and whose decision was to be made by a majority."

But the phrase, "shall be ascertained by a jury of twelve men, in a court of competent jurisdiction, as shall be prescribed by law," was first introduced into our Constitution by the convention of 1885. And for twenty years and more prior to, and up to the time it was so introduced, the legislation on the subject of this class of proceeding had uniformly and persistently ignored the right of trial "*by jury*," and uniformly and persistently had repudiated a "*jury*" in ascertaining the compensation to be paid; and had with the same persistency and uniformity, delegated this function to commissioners, designated *not as jurors* but as *commissioners*.

So Judge Johnson, in the interpretation of our Constitution in the light of legislative history, preceding it, in this class of proceedings, "would without any doubt resting upon his mind be of opinion that the peculiar tribunal, provided by the act of 1887, was not a jury," in the sense of Sec. 29, Art. 16, of the Constitution of Florida.

In respect, however, of the *particular* propositions as to the Legislature authorizing under this clause of the Constitution of New York, a *majority* to ascertain the compensation and as "*to what constitutes a jury*," the Cruger case is cited by appellant to support, *that* case has been repudiated as authority by the Court of Appeals of New York, which declared in Menges vs. City of Albany, 56 N. Y., 378-9, that the determination

of those questions was not necessary in the Cruger case. And that court further says : "The determination of the questions whether the jury authorized by the seventh section must be composed of the same number as the jury specified in section 2 of the same article, and whether a unanimous agreement is not alike essential to the validity of their action, will be reasonably made when necessary to a disposition of the case in which they are involved."

So far from the term, "jury of twelve men," used in the Constitution of 1885, having theretofore acquired a "peculiar" meaning, as applied to condemnation proceedings, by prior legislative use, continued in that special sense up to the time of the convention which introduced it into the Constitution of Florida, the Legislature had theretofore denied to the land owner in condemnation proceedings the right to a trial by jury, and had in terms confined him in the ascertainment of his compensation to commissioners of appraisers—viewers.

It was clearly the purpose of the Constitution of 1885, to enlarge the rights of the land-owner in reference to his getting "full compensation," by ordaining its ascertainment, *not* by viewers or commissioners of appraisal, but by a "jury of twelve men *in* a court of competent jurisdiction, as shall be prescribed by law."

The Constitution of Illinois of 1870 provided: "Private property shall not be taken or damaged for public use without just compensation. Such compensa-

JANUARY TERM, 1892.    273

J. T. & K. W. Ry. Co. v. Charles S. Adams.—Argument of Counsel.

tion, when not made by the State, shall be ascertained by a jury, as shall be provided by law." This provision was construed in Chicago, M. & St. P. R. R. vs. Hock et al., 9 N. E. Rep. 205, s. c. 118 Ill., 587; and the court said: "Prior to the adoption of the Constitution of 1870 neither the organic law nor the statute granted a jury trial where property was condemned for public use. This section of the Constitution was no doubt intended as a new protection to the citizen—one not theretofore enjoyed—an additional safeguard placed in the hands of the citizen to which he might resort when a necessity seemed to exist to afford him full compensation for property taken. In a proceeding to condemn lands for railroad purposes, it may be regarded as a plain proposition that each party had a right to have the matter involved tried by a jury." * * *

The act of 1887 then, had it not been amendatory to sections which at the time had no legal existence and therefore void, would be void, because it deprives the land-owner of his constitutional right to have the question of his compensation tried by a jury. Postal T. C. Co. vs. A. G. S. R. R. Co., 9 So. Rep., 555 ; s. c. Supreme Court Alabama, June 23, 1891 ; *Ex parte* Reynolds, 12 S. W. Rep., 75; s. c. 52 Ark., 330.

The unconstitutionality of this statute of 1887 appears from another point of view.

Prior to the adoption of the Constitution of 1885, the right of eminent domain in its exercise by the sov-

·ereign, or by a corporation or individual to whom the right had been delegated, did not, as has been repeat-·edly adjudicated, involve or carry with it the guarantee to the land-owner upon whose property the right ·was exercised of a "trial by jury" in the ascertainment of the compensation to be awarded him for the taking of his lands.  In Florida, as the framers of the Constitution well knew, the compensation adjudged under the Constitution and laws then in force to the land-owner, was such and only such as commissioners of viewers or of appraisal, as they were variously and indifferently termed, might determine.

It was in view of this state of the law that the change wrought by Sec. 29, Art. 16, was made.

Its language, and the placing of such a safeguard in the *organic* law, forbids the construction that the whole effect accomplished by this change was to impress upon the Legislature in framing enactments authorizing the condemnation of private property, the *philological* view of the framers of the Constitution that the more apt way to describe commissioners of appraisal was to designate them as *"jurors"* and their ·action, when their number has been increased to twelve, as the ascertainment "of compensation by a ·jury of twelve men, in a court of competent jurisdicdiction."  It will be seen on a careful comparison of ·the act of 1885 with the act of 1887, that the only sub-:stantial difference between the two is, that the one designated the *six functionaries*, who report the amount of ·compensation to be awarded the land-owner, as *com-*

*missioners ;* and the other designates them as *jurors,* and increases the number of these functionaries to twelve.

This legislation offends also, Sec. 20, Art. 3, since it provides a special mode of summoning juries for this class of cases.

In the brief of appellant, page 1, the following statement is made: ''The appellees' exceptions to the finding of the jury, numbered from one to eleven, inclusive, do not appear to demand notice, as they are not in any way substantiated by the record, and we doubt if counsel for appellees had the record before them at the time the exceptions were drawn.''

Recurring to the judgment of the judge, rendered on these exceptions, it will be seen that these exceptions were each and every sustained by the judge. If the insinuation therein directed against appellees' counsel has any force, the judge below falls under the condemnation of having by his solemn judgment sustained exceptions which '' are not in any way substantiated by the record,'' and for the bare drawing of which, counsel for the appellees are excused before the Supreme Court in the charitable suggestion of a doubt whether at the time of drawing them they had the record before them. The judge, who determined each and every these exceptions against appellant, is denied the benefit of this charitable exculpation.

*J. R. Parrott, Hamlin* and *Stewart, T. U. Day,* contra.

RANEY, C. J. :

The condemnation proceedings in which the appeal now before us was entered are set forth in the case of the J., T. & K. W. Ry. Co. vs. Adams, 28 Fla., 631, 10 South. Rep., 465. As there shown, objections were filed to the report of the jury, and on August 10th, 1891, the Circuit Judge made an order sustaining the exceptions and protests and refusing a confirmation of the report, and also refusing "to order further proceedings in this matter, on the ground of the unconstitutionality of the law authorizing the same," and *dismissed* the case.

The contention of the appellees is in support of his motion to dismiss the appeal, and is, that there is no appeal to this court from the above order.

Their counsel argue that there is no authority for the entry of the order appealed from, in the chancery order book as the judgment or decree of the court; that it is only in case the verdict of the jury is confirmed that an entry is authorized. It appears from the reading of the statute, as will be found in the preceding statement, that if the protesting party show good cause why the report should not be confirmed, the judge shall refuse to confirm it, and shall order and cause to be taken such further proceedings in the matter, not inconsistent with the act, as in his judgment right and justice may demand. If it can for a moment be im-

agined that it was the purpose of the Legislature that an order refusing to confirm the report, and directing further proceedings, should not be entered on the record book of the court, then such entry is not essential to the validity or fullest effect of such order. We, however, do not find any ground for concluding that such was the legislative purpose, in enacting that a confirming order shall on payment to the owner of the land, or to the clerk subject to the order of such owner, of the amount awarded, be entered of record on the chancery order book of the court, and shall thereupon become a judgment and decree of said court, with the consequent rights in the railroad or canal company indicated by the statute. Although this feature of the statute does indicate a positive intent that the order of confirmation shall not be recorded or become effectual until payment has been made in the manner indicated, the reason of the provision is, that the judicial condemnation of the land shall not be effectual or operative until the payment has been made. The end thus sought and attained is not, nor is the reason dictating it any ground for inferring that the Legislature intended that an order in the cause from which no similar results could flow, shall not be recorded, but (if it be that counsel mean to concede that the statute authorizes anything but a verbal refusal of confirmation.) should be left in the much more precarious and altogether unusual condition of being merely filed. In our judgment the only intention that can be imputed to the Legislature

at all reasonably, is that orders of this character shall be promptly recorded in the chancery order book. Clerks who do not thus record them will be essentially remiss. These observations are equally applicable to the order for summoning the jury, referred to hereafter.

It is further argued that the function given by this act to hear and determine is vested in the judge, and not in the court. We do not think so. The 29th section of the sixteenth article of the Constitution provides that compensation in these condemnation cases "shall be ascertained by a jury of twelve men in a court of competent jurisdiction, as shall be prescribed by law." The first section of the fifth, or judicial, article vests the judicial power of the State in the Supreme, Circuit, Criminal and County *Courts*, and in County Judges and Justices of the Peace, and the thirty-fourth section authorizes the Legislature to establish in incorporated towns and cities courts for the punishment of offenses against municipal ordinances; and the thirty-fifth section ordains "that no courts other than those herein specified shall be established in this State." The eleventh section of the same article gives the Circuit Courts "exclusive original jurisdiction in all cases in equity, also in all cases at law not cognizable by inferior courts, and all cases involving the legality of any tax, assessment or toll; of the action of ejectment and of all actions involving the titles or boundaries of real estate; * * and of such matters

as the Legislature may provide." It also gives the Circuit Court certain criminal and certain appellate jurisdiction not necessary to mention. No jurisdiction is given Circuit Judges, as such, except concurrent power with the Circuit Courts "to issue writs of mandamus, injunction, *quo warranto*, *certiorari*, prohibition and *habeas corpus*, and all writs proper and necessary to the complete exercise of their jurisdiction," and certain powers as to Court Commissioners, and the Legislature may give Circuit Courts and Judges extra-territorial jurisdiction in chancery cases. The meaning of the clause, *supra*, from the twenty-ninth section of the sixteenth article is, that the court mentioned in it is one of the courts mentioned in the first section of the fifth article. The Circuit Judges, considered as distinct from the Circuit Courts, are not one of these courts, and, in our judgment, the power contemplated by Section 29 of Article XVI cannot be devolved upon them as merely such judges; in other words, the Legislature cannot create for these condemnation proceedings a new tribunal of which Circuit Judges, as distinct from the Circuit Court, is the judicial functionary; but in so far as the exercise by him of judicial functions in connection with these matters, the power must be given to the Circuit Court. A careful view of the entire statute satisfies us that it was not the intention of the Legislature to create any new tribunal, or to devolve the powers on the judge, as judge, but upon the Circuit Court as created by the Constitution. The

amendatory statute referred to in the statement, provides that the petition shall be filed "in the clerk's office of the Circuit Court of the county in which the land lies," and that on the presentation of such petition "to the judge of such Circuit Court," he shall make an order for the sheriff to summon a jury to fix the amount of compensation to be paid the land-owner, their report of which, as shown by the statement, is to be filed "in the office of the Circuit Court of such county," and the protest or exception thereto is to be filed "with the clerk of said court," and upon the payment of the amount of compensation fixed by the jury, the "order confirming the verdict of said jury shall be entered of record on the chancery order book of said court, and it shall thereupon become a judgment and decree of said court." It is also provided by a subsequent section that at any time after such entry of this order, the railroad or canal company, on due proof of the same, "may obtain a writ of assistance from said court, under the order of said judge," to put such company in possession of the land condemned. The proceeding is one commenced in the court by filing the petition in the clerk's office, where a bill in chancery or a præcipe for the institution of a suit in equity, or an action at law, in that court, is filed ; and there also the report, and other proceedings are filed and the judgment is recorded in its order book, and the writ which issues is the writ of the court. The fact that the statute directs that certain orders shall be made by the judge, is nothing more than a

specification of the duties of the judge as a part of the court, and no more separates him or the proceedings from the court than the common law duties of such judge would have this effect in his performance of the same as a part of the court when exercising common law powers. It could as well be said that the clerk performed his duties under this act not as a functionary and part of the court, but distinct therefrom.

It is not only a proceeding in the Circuit Court, but the order of dismissal is one from which an appeal lies to this court, although the act says nothing as to appeals. The Constitution (Section 5, Article V) gives the court "appellate jurisdiction of all cases at law and in equity originating in the Circuit Courts," and our statutes provide the mode of taking appeals from any final judgment at law and from interlocutory and final decrees in equity. This proceeding is on the equity side of the Court; though statutory in its creation, it has been placed there by the Legislature; not, it is true, as evidenced by an express declaration to this effect, yet by evidences of an intention to do so, which are unmistakable in both their nature and effect. It is only the chancery side of the court, or the court as a court of chancery, that has a chancery order book, and when the order confirming the verdict of the jury is recorded in the "chancery order book of said court," and thereupon becomes "a judgment and decree of said court," it is meant that it becomes a judgment and degree of the Circuit Court as a court of chancery, and not as exercising law powers. It, of course, is not on both sides of the court, and if the

law-makers had not intended that the order of confirmation should be a judgment or decree in chancery it would not have made the designated provisions. The writ authorized to be issued to enforce the judgment is also a chancery writ. In the absence of insuperable evidence to the contrary, consistency of purpose will always be accorded the Legislature, and must in this case be conceded, at least to the extent that it intended the petition and other papers to be filed in, and the other proceedings to be, on the same side of the court, and not in different jurisdictions. The devolution of this power or function on a court of chancery is not anomalous. The case of N. O. & T. R. R. Co. vs. Ryan, 64 Miss., 399, cited by counsel for appellees, shows that it is done in Mississippi; and moreover the writ *ad quod damnum,* the prototype of these proceedings, issued, originally, out of, and was returnable into, chancery. Fitz-Herbert's Natura Brevium, 509, m. p. 211; Title, AD QUOD DAMNUM, in Bouvier's, and in Black's Law Dictionaries.

It is said in Lewis on Eminent Domain, sec. 550, that where proceedings are commenced in, or come by appeal or *certiorari* before, a court from whose decision an appeal lies to the Supreme Court of the State, then whether an appeal will lie in the class of cases under consideration will depend upon the Constitution and statutes of the State; and that, as a rule, such appeals are entertained in the absence of words in the law which express or clearly imply a contrary intent. In North Mo. R. Co. vs. Lakeland, 25 Mo., 515, involv-

JANUARY TERM, 1892. 283

J. T. & K. W. Ry. Co. v. Charles S. Adams.—Opinion of Court.

ing a proceeding of this kind, instituted in the Circuit Court under the charter of the named appellant railroad company, it was held that it was a proceeding in which the court acted in its judicial capacity, and that an appeal lay to the Supreme Court from a final judgment of the Circuit Court therein. It is said in the opinion : "That there may be cases where special and limited authority is delegated to a court, not because it is a court, but from some idea of convenience or propriety, and the decision of the court made final, is not questioned. It may, however, admit of a doubt whether the Legislature could so devise a proceeding designed to effect the transfer of private property to the public, as to deprive the courts of the power of determining whether the constitutional restriction on this subject has been honestly complied with. However this may be, the question here is, does the court act in its judicial capacity, and can it exercise, in its control over the subject confided to it by the charter, the general powers and jurisdiction of a court, or is the court, *quoad hoc*, a mere commissioner, a special tribunal selected for a special purpose, and *functus officio* when the special powers confided to it by statute have been exhausted ?" Reviewing the act, whose features are somewhat similar to ours, and answering this question with the conclusion that the court acted in its judicial capacity and not as a mere commissioner, it is then said : "Although the act is carelessly drawn, and framed in a mode to justify doubts as to its true intent, we will not presume, notwithstanding the absence of any special provisions for an appeal, that it

was the intention of the Legislature to deprive the parties of this right, especially as the provisions of the general law seem large enough, without any strained construction, to embrace the case. In Lawrence & U. M. C. Co. vs. Smith, 3 Ind., 255, the decision was that a provision in the company's charter that the judgment of the Circuit Court, in a proceeding of this kind, should be final, was not sufficiently explicit to authorize the conclusion that a writ of error from the Supreme Court would not lie. It was contended in St. Louis & S. R. Co. vs. Lux, 63 Ill., 523, that as the statute made the judgment of the Circuit Court final and conclusive, an appeal did not lie, but the Supreme Court held that the right to have the decision of the former court reviewed was a constitutional right secured by the organic law of the State. In this case it is said of Coon vs. Mason County, 22 Ill., 666, which is seemingly in conflict, that the constitutional right to prosecute a writ of error was not considered. See also Morris vs. City of Chicago, 11 Ill., 650; North Mo. R. Co. vs. Reynal, 25 Mo., 534; Lanesborough vs. County Commissioners, 22 Pick., 278; Sacramento, P. & N. R. R. Co. vs. Harlan, 24 Cal., 334; Baltimore & Havre-de-Grace T. Co. vs. Northern Central Ry. Co., 15 Md., 193.

Our conclusion is that the Circuit Court acts, under the statute before us, in the exercise of its judicial powers as a court, and that an appeal lies to this court from the order of dismissal. It is not a case in which the judge acts as a commissioner, or as a special tribu-

nal created by statute with limited powers and a discretion from which no appeal has been given. Heirs of Bryant vs. Stearns, 16 Ala., 302; Wilmington & S. R. R. Co. vs. Condon, 8 Gill & J., 443; Hawkins vs. County of Randolph, 1 Murphy, 118.

The motion to dismiss is therefore denied.