St. John v. The Tombeckbee Bank.

1. In an action against a Bank, the return of a Sheriff shewing that he served process on the *Cashier*, without proof that the person was such *Cashier*, is insufficient.
2. The return of the Sheriff is not sufficient evidence of such fact.

SAMUEL ST. JOHN JR., brought this action and several others in the Circuit Court of Washington county, against the President, Directors and Company of the Tombeckbee Bank, to recover the amount due by a large number of the notes of said Bank held by him.

The proceedings were instituted under the act incorporating the Bank, by notice and motion. The notice was issued by St. John in October 1827, directed to the President Directors &c., notifying them that at the next November term, he would move against them for judgment for the amount of the notes claimed by him: a schedule describing them was appended &c.; on the back of this notice, the Sheriff made the following return: "Received 19th, October 1827, executed by shewing the original and leaving a copy of this notice, and also of the schedule therein referred to, and thereto annexed, on Robert H. Croswell acting as Cashier of the Bank incorporated under the name and style of "the President, Directors and Company of the Tombeckbee Bank," at St. Stephens, this 20th day of October, ber, 1827, George W. Myers, Sheriff of Washington county, by his deputy R. Chamberlin." The cause was transferred to the Circuit Court of Mobile county, by an agreement in which the Bank reserved to itself all rights of exception. At the February term 1828, of Mobile Circuit Court, the cause came on to be heard, and judgment was rendered in favor of the plaintiff against the Bank, for $5918 with interest from the day on which payment had been demanded.

Many errors were assigned in this Court by the the counsel for the Bank, which it will not be necessary to mention, as the decision was on one only, which is set forth in the opinion delivered.

HITCHCOCK, for the appellants. The notice was not served on the corporation, nor on any member thereof. It appears from the record that notice was served upon Ro-

ʼʼert H. Croswell, who is alleged to have been the acting Cashier. This notice is insufficient in law, because it should have been served upon the corporation. By the third section of the act establishing the Bank,[a] it is declared that "it shall be lawful for the corporation, after having given ten days notice thereof &c. to move for judgment" against any of its debtors, "and all debts from said corporation by bond, bill, note, or otherwise, to any individual, or body corporate, may be sued for and recovered in like manner. The remedy therefore, for the recovery of any debt due from the corporation, is given by the charter; and the commencement of any proceeding against it, must be by notice to the corporation. In this case, the proceeding was by notice to a person styled the acting Cashier, who is not according to the charter, even a member of the corporation. There has therefore been no notice to the corporation. Notice to a corporation may be served upon its principal officer. In this case it might have been served upon the President of the Bank.[b] The defendant in error however relies upon an act of the Legislature, passed on the 17th of December 1821,[c] for purpose of sustaining the proceedings of the Court below. This act, so far as it contravenes the charter of the Bank, is void. It has been frequently decided by Courts of the highest authority; that a charter is a contract, and cannot be altered by one party without the consent of the other.[d] The act of the Legislature, so far as it authorizes a notice to be served upon the Cashier, or acting Cashier, is in contravention of one of the provisions of the charter, which requires that notice shall be served upon the corporation, and is therefore void. An extra judicial opinion of Judge Johnson, is invoked to the aid of the defendant. In delivering the opinion of the Supreme Court of the United States in the case of the *Bank of Columbia v. Okely*,[e] the Judge says, "we attach no importance to the idea of this being a chartered right in the bank; and as such we have no doubt of its being subject to the will of Congress." The question before the Court was whether a law of Maryland, giving a summary remedy to the Bank of Columbia, was constitutional. This question arose upon the judgment of the Court below quashing an execution in favor of the Bank, on the ground of the unconstitutionality of the law. No question was before the Court in relation to the power of the Legislature to alter the remedy prescribed in the charter; for no alteration had been attempted. This opinion of

*July 1830.*

St John
v.
Tombeckbee
Bank.

[a] Laws of Ala. 44.

[b] 2 Bacon 11.

[c] Laws of Ala. 62.

[d] 4 Wheat. 668. Minor's Rep. 23.

[e] 4 Wheat. 245.

Judge Johnson was therefore on a point not before the Court, and not discussed by the bar, and cannot therefore be considered as any authority. The case of *Young v. The Bank of Alexandria,* cited by the Judge as authority for his opinion, does not support that opinion, but from it the contrary may be clearly inferred. The question there was, whether Young was entitled to a writ of error to the judgment of the Circuit Court of the United States for the District of Columbia, when by the act of Virginia, incorporating the Bank, the right of appeal from one Court in that State, to another in the same State, had been denied. Chief Justice Marshall, in delivering the opinion of the Court says, "the act incorporating the Bank professes to regulate, and could regulate only those Courts which were established under the authority of Virginia. It could not affect the judicial proceedings of a Court of the United States or of any other State. There is a difference between those rights on which the validity of the transactions of the corporation depends, which must adhere to those transactions every where, and those peculiar remedies which may be bestowed on it. The first are of general obligation; the last can only be exercised in those Courts which the power making the grant can regulate. The act of incorporation then, conferred on the B ink of Alexandria a corporate character, but could give that corporate body no peculiar privileges in the Courts of the United States, not belonging to it as a corporation. Those privileges do not exist, unless conferred by an act of Congress.

The Court here decides that Virginia could not give those privileges which she did not herself possess. But the inference from this *opinion is clear,* that the privileges granted in the act of incorporation, would be binding upon the Courts of that State; and from the nature of a contract, would be binding upon the Legislature, which is one of the contracting parties. Those privileges when contained in a grant, where there is power to grant, become rights, and are under the constitution of the United States inviolable. What principle of law is better established than that the Legislature cannot divest vested rights? A strict adherence to this rule of law is the only guarantee to our individual property, and to our dearest rights. In the case before the Court, the Legislature had the power to grant; they have granted, and their grant is inviolable; for no State can pass any law impairing the obligation of contracts.

· if a particular remedy has been contracted for by the stockholders in the Bank, that remedy is a right, and as sacred as any other secured by the contract. It is admitted that the charter of the bank cannot be taken away by the Legislature. If it can take away the particular mode of suing and being sued, granted by the charter, the most valuable part of the grant is subject to their control. Take away that part of the grant, and the residue is not worth preserving. By what principle of law can the grantor distinguish between the different parts of his grant, and say unto the grantee, this much will I take away; the residue shall remain unto thee? But reason and law declare that all parts of a grant are equally binding upon the grantor, and that the rights secured thereby are equally protected by the law of the land. The dictum of Judge Johnson is contrary to the principles settled by the Supreme Court of the United States at the same session, in the case of *Dartmouth College v. Woodward.*

But this question has been expressly decided by this Court. The following is an extract from the opinion of the Court in the case of *Logwood et al. v. The Huntsville Bank.* "It is contended by the plaintiffs in error, that the charter of the bank granting the privilege of suing and obtaining judgment in a summary way, by motion to the Court, is contrary to the provisions of the constitution of the State, and therefore of no validity in the law," (here a part of the charter is recited.) "It is contended that this part of the charter is contrary to the first section of the first article in our declaration of rights, which declares that "no man or set of men is entitled to exclusive, separate, public emoluments, or privileges, but in consideration of public services," for the corporation it is contended that the privileges granted by the charter are not of that description intended to be restrained by the foregoing article in the declaration of rights; that if there could have been any doubt on the construction, it was explained by the first section of the schedule of the constitution; and further that it was not in the power of the convention, in any way to have abridged the privileges granted to the Bank by its charter. If this last position of the defendants in error be tenable, it will not be necessary that the Court should decide on the proper construction of the first section of the declaration of rights."

"What then is the nature of the connexion in law, between the Legislature and the individuals for whose ben-

efit the charter was made.    Is not the Legislature the grantor?    Are not the individuals the grantees?    And is not the charter, the instrument between them, a grant.    A grant is a contract between the grantor and the grantee, both parties being capable of contracting.    The charter in question is then a contract; but is it such a contract as would be protected by the constitution of the United States, which declares that "no State shall pass any law impairing the obligation of contracts?"    In another part of the opinion, the Court say, "it would then follow that the charter in question is a contract of that nature that would be protected by the constitution of the United States, and any attempt to alter or abridge the provisions of that charter, without the consent of the individuals composing the corporation, would not be valid.    So long as it confines itself within the provisions of the grant, the corporation is omnipotent, and independent of any legislative control."    There was therefore no proper service of the process, and we are entitled to a reversal on this ground.

ELLIOTT AND CRAWFORD, for the appellee.

By JUDGE CRENSHAW.    In this case, among other things, it is assigned for error "that it does not appear from the record to have been proved to the Court, that Robert H. Croswell was the acting Cashier of the Bank, at the time when the notice was served."

In the case of the *Huntsville Bank v. Walker*, decided in this Court in 1825, from the Sheriff's return, it appeared that notice had been served on *William G. Hill*, Cashier of the Bank, but the record did not show that any proof was offered to satisfy the Court, that Hill was Cashier.    In giving their judgment, the Court expressly say, "that the Sheriff's return proves only that service was made on a particular individual not that such individual, was Cashier; he being only an agent of the Bank, his identity must be ascertained as other facts are, by proof."    From the principle established by that decision, the Court is not inclined to recede, and it must be decisive of the present question.

In the case before us, the Sheriff has returned service of notice "on Robert H. Croswell acting Cashier of the Bank." The judgment of the Court below merely recites the Sheriff's return, setting forth "that due notice of the intended

motion having been served on Robert H. Croswell, who was the person at that time acting as Cashier &c." It does not appear from the judgment, or other part of the record, that there was any evidence before the Court to prove that Croswell was in fact the acting Cashier of the Bank.

Being satisfied that this is error, and that the judgment must be reversed on this ground, the Court having declined considering the other assignments of error.

JULY 1830.