[Independent Publishing Co. v. American Press Association.]

sent of the others, and had, thereby, released the defendant, one of said endorsers. We hold there was no error in the judgment rendered for the following reasons : The note as appears was plaintiff's statutory or equitable estate, held without the intervention of an active trustee; the release which appellant contends had the effect to discharge the endorser, McFarlin, from the note, and on which he relies, is shown to have been executed without any consideration, and the alleged release, whether it consisted in scratching the name of the endorser off the note, or by the writing which was executed—the one had no more validity than the other—having been given or made by plaintiff without any consideration, and without the concurrence and assent of her husband, was void and of no effect. Authorities *supra*.

Affirmed.

McClellan, J., dissenting.

# Independent Publishing Company v. American Press Association.

*Application for Certiorari to Justice of the Peace.*

1. *Judgment by default against corporation; error without proof of service on one of the corporate officers.*—In an action against a corporation, it is error to render judgment by default against the defendant corporation without proof that the person upon whom the summons was served was as an officer of the corporation, who was authorized under the statute (Code, § 2657) to receive service of process; and the judgment entry must recite the fact of such proof being made.

2. *Same; when common law writ of certiorari is proper remedy.*—Where, in an action before a justice of the peace a judgment by default is rendered against a corporation, without proof that the person upon whom summons was served was an officer of the defendant corporation, upon whom the statute (Code, § 2657) authorized service, a common law writ of *certiorari* is the proper remedy to revise such improper and erroneous judgment. (Stone, C. J., dissenting.)

3. *Same; appeal not an adequate remedy.*—When a judgment has been erroneously rendered by a justice of the peace against a corporation without proof of service upon one of its officers, upon whom service could be made, an appeal from such judgment to the circuit

[Independent Publishing Co. v. American Press Association.]

court does not furnish an adequate remedy, since the taking of such an appeal would, under the statute (Code, § 3405) operate as a waiver of the objection that the justice of the peace had not acquired jurisdiction of the defendant when the judgment was rendered. (STONE, C. J., dissenting.)

4. *Common law certiorari; application need not show petitioner had a meritorious defense.*—Where a corporation seeks, by common law *certiorari*, to avoid a judgment obtained against it without proof of service upon one of its officers upon whom service could be rendered, it is not necessary for the application to show that the corporation had a meritorious defense to the action which it had no opportunity to make. (STONE, C. J., and HEAD, J., dissenting.)

5. *Same; sufficiency of petition.*—When, on an application for a common law writ of *certiorari* to avoid a judgment rendered in a justice of the peace court, the petition contains a transcript of the proceedings before the justice, and the return of the constable shows affirmatively a want of a proper service of the summons, and the judgment fails to show any proof of service upon the defendant, such petition is not insufficient, although it fails to show that the defendant had a good defense to the action. (STONE, C. J., and HEAD, J., dissenting.)

6. *Same; what revisable when granted.*—A common law writ of *certiorari* is granted to revise only error apparent on the record; and when granted an issue of fact can not be made up in the supervisory court to supply omissions in the record proceedings, or to show that the record recitals of the inferior court, where the judgment was rendered, are not true. Section 3158 of the Code of 1886 does not affect this rule. (STONE, C. J., dissenting.)

7. *Same; discretion of the court.*—When a common law writ of *certiorari* has been granted the discretion of the court to grant or refuse the writ is exhausted; and, after the cause is brought before the court, the petition must be adjudicated on its merits, as shown by the transcript and record from the inferior court. (STONE, C. J., dissenting )

8. *Correct ruling, though on wrong reason, will not be reversed.*—When an order or ruling by a court granting a motion is correct in itself, it will not be reversed, although the reason assigned for such order or ruling is erroneous or insufficient.

APPEAL from the Circuit Court of Madison.

Heard before the Hon. H. C. SPEAKE.

The appeal in this case is taken from a judgment of the circuit court in dismissing a writ of *certiorari*.

On April 4, 1888, the appellant in this case, the Independent Publishing Company, filed the following petition, addressed to the Judge of Probate of Madison county : ''Your petitioner, the Independent Publishing Company, a corporation duly incorporated under the

laws of the State of Alabama, respectfully shows that on the 23d day of March, 1888, a judgment was rendered against your petitioner in a certain cause, wherein The American Press Association is plaintiff and your petitioner is defendant, for the sum of $91.80 debt, and $2.35 costs, before Robert W. Figg, a justice of the peace in and for said county and State. Petitioner avers that said judgment was rendered by default, and without any proof of service upon said corporation, as the law directs and requires, and petitioner avers that it did not enter any appearance in said cause by attorney or otherwise; and petitioner further avers that no summons was served upon any officer, or agent of said company as required by law. A copy of said judgment entry is herewith filed marked Exhibit 'A' and prayed to be taken and considered as part of this petition. Petitioner avers that execution has been issued on said alleged judgment, and levied upon its property, and that after the levy of said execution, and on the 30th day of March, 1888, it filed the following motion in said cause, limiting its appearance therein for the purpose of said motion, viz.:

'The American Press Association }  In Justice's Court,
              v.                 }  Rob't W. Figg, Esqr.,
Independent Publishing Company   }  Madison Co., Ala.

Comes the defendant and moves the court to set aside the judgment heretofore rendered in this cause, and, for grounds of this motion, states that said judgment was by default, and no proof was made of the process, and that, therefore, said judgment is void. Said judgment was by default, and was entered and recorded without proof being made that the person upon whom the summons and complaint was served was at the time of its service such officer, or agent of said company as process could be served upon, wherefore said judgment is void. Humes, Walker, Sheffey & Gordon, Attorneys for Defendant.'

"Said motion was on the same day denied and overruled. And petitioner avers that it has a clear legal right to have said judgment set aside, and tried in said justice's court, and petitioner avers that it has no other adequate legal remedy by which to obtain said clear legal right except by the common law writ of *certiorari*. And petitioner avers

that said judgment so rendered is absolutely null and void.

"The premises considered, your petitioner prays that said American Press Association be made a party defendant hereto, and that to this end, subpœna and all other needful process issue to it. That said Rob't W. Figg, justice of the peace, as aforesaid, be required to send up to the circuit court of said county all the records, papers and proceedings in said cause, and that he be required, commanded and directed to abstain from all further proceedings therein until the further order of said circuit court. And your petitioner prays that said Isham J. Watkins, constable as aforesaid, be commanded and directed to abstain from all further proceedings in said cause, until the further orders and directions of said court. And your petitioner prays that upon the hearing of this petition, that said judgment be vacated, set aside and held for naught, and be declared as absolutely null and void. And petitioner prays for such other, further and different relief as the facts and equities of the case may require."

In response to this petition the probate judge ordered that, upon the petitioner's entering into a bond in the sum of $188.30, a writ of *certiorari* issue in accordance with the prayer of the petition. The bond was duly executed, and the writ of *certiorari* was issued and executed upon the said Rob't W. Figg, justice of the peace.

The American Press Association moved the court to dismiss and quash the writ of *certiorari*, which had been granted, and assigned the following grounds for such motion : "1st. Because no notice was given of the application for said writ of *certiorari* to the American Press Association, or attorney. 2d. Because said writ of *certiorari* was granted in a case not authorized by law. 3d. Because the Independent Publishing Company was represented by counsel on the day set for the hearing of said cause in the justice's court, and applied for a continuance of the cause, which was denied by the court. 4th. Because the said Independent Publishing Company had the right of appeal from said judgment. 5th. Because service was made on R. E. Pettus, the president of said Independent Publishing Co. 6th. Because there are no errors of law apparent on the face of the record, which are necessary for this court to correct."

[Independent Publishing Co. v. American Press Association.]

The other facts of the case are sufficiently stated in the opinion. The cause was submitted to the court on this motion, together with the return of the justice of the peace to the writ of *certiorari*, which included the summons and complaint with the endorsement by the constable thereon, the judgment rendered, and the motion made by the defendant to vacate and set aside said judgment, and the transcript of the proceedings in the justice of the peace court.

The court granted the motion, ordered the *certiorari* dismissed, and rendered judgment against the petitioner and the sureties on the *certiorari* bond. The present appeal is prosecuted by the Independent Publishing Company, and this judgment of the court is assigned as error.

HUMES, SHEFFEY & SPEAKE, for appellant.—To sustain a judgment by default against a corporation, it is requisite that it should appear otherwise than by the sheriff's return, or the clerk's statement, that the person upon whom the summons and complaint were served, occupied such relation to the defendant, that the defendant could legally be made a party by service on such person.—1 Black on Judgment, 85, § 81; *So. Express Co. v. Carroll*, 42 Ala. 437; *Oxford Iron Co. v. Spradley*, 42 Ala. 24; *Talladega Ins. Co. v. McCullough*, 42 Ala. 667; Cases cited under § 2657 of the Code of 1886.

There being no valid judgment, an appeal to the circuit court would have waived such defect. *Certiorari* was the proper remedy.—3 Brick. Dig. 106; *Glaze v. Black*, 56 Ala. 379; *Ex parte Boynton*, 44 Ala. 261; *Cobb v. Thompson*, 87 Ala. 381.

WILLIAM RICHARDSON, *contra.*—A common law *certiorari* can be invoked only where there is a legal right and no other adequate remedy. Where an appeal lies *certiorari* is not the proper remedy.—2 Wait's Ac. & Def., 138; *Dow v. True*, 19 Me. 46; *Cobb v. Thompson*, 87 Ala. 381; *Faust v. Mayor*, 83 Ala. 279; *A. G. S. R. R. Co. v. Christian*, 82 Ala. 307; *City Council v. Belser*, 53 Ala. 379; *Ex parte Buckley*, 53 Ala. 42.

STONE, C. J.—The American Press Association brought suit against the appellant before a justice of the

peace, on a money demand less than one hundred dollars. The suit was instituted by summons and complaint, in statutory form as prescribed in this State. There was a return indorsed on the summons in these words: "Executed by summons on March 15, 1888, [signed] J. Watkins, Con." Immediately below the signature of the constable we find these words: "Summon R. E. Pettus, W. E. Pettus and M. O. Pettus, incorporators." What these words import is not clearly shown. It is possible, if not probable, that these were the persons on one or more of whom service was directed to be made. We can not, in the teeth of the return, suppose that service was not made on some person. The justice rendered judgment by default against the Independent Publishing Company, but he made no note or memorandum, showing that any proof was made before him as to how, or on whom, service was made. The defendant being a corporation, it follows that service could be made only on some officer or agent of the corporation, as prescribed in section 2657 of the Code of 1886.

When a corporation is the party sued, there can not be a literal service of process on the defendant. Only some officer or agent can be summoned. *Ib.* And, inasmuch as the court can not judicially know who are officers or agents of the corporation, the return of the officer "executed," or "served," in such case, does not *per se*, prove that service has been properly perfected. There must, in addition to the return of service, be independent proof made, that the person served was "president," "secretary," or "agent," &c., as the case may be, to authorize a judgment by default.—*Earbee v. Ware,* 9 Por. 291; *Norwood v. Riddle,* 1 Ala. 195; *Lyon v. Lorant,* 3 Ala. 151; *W. & C. R. R. Co. v. Cole,* 6 Ala. 655; *M. & C. R. R. Co. v. Whorley,* 74 Ala. 264; *Man. Fire Ins. Co. v. Fowler,* 76 Ala. 372; *Cen. R. R. & B. Co. v. Carr, Ib.* 388.

The cases we have cited establish two propositions by the uniform rulings of this court: *First,* That in suits against corporations, it is error to render judgment by default against the corporation on service effected on a person, as officer or agent of the corporation, without first making proof that he was such officer or agent. In the absence of such proof, it is not shown that service

[Independent Publishing Co. v. American Press Association.]

was made on any person the law authorizes to receive service, or to represent the corporation. *Second.* A judgment rendered without such proof, though irregular and reversible, is not, on that account, void. It is so far a judgment that an appeal will lie to review it. That is shown by the cases cited above, to which others might be added. And in those cases, where the requisite proof was not shown to have been made, we did not pronounce the proceedings void; we did not quash the proceedings. We reversed and remanded the cases, that a further trial might be had. If on such remandment the necessary proof should be made, and judgment again rendered, we apprehend no one would contend that such judgment would be void, or even reversible. The very remandment of the cases for further trial was the equivalent of an affirmation by this court that the proceedings were not void. Void proceedings are never remanded for further trial.

Another argument—possibly a stronger one—against the contention that the judgment we are considering is void. Even after appeals to this court from judgments of the lower courts, if there has been a failure to make proof of service of process in cases requiring such proof, the courts appealed from have permitted proof of service to be made after the appeal was taken, and have amended the judgments *nunc pro tunc*, showing that proof of service had been made. And this court, on having the amended judgment certified up in obedience to *certiorari*, has uniformly affirmed such judgments. Not the judgments as originally appealed from. They were erroneous, and would have been reversed. The judgments affirmed were the amended judgments; amended on proof made after the appeals were taken.— *Moore v. Horn*, 5 Ala. 234; *West v. Galloway*, 33 Ala. 306; *Ware v. Brewer*, 34 Ala. 114; *Woodward v. Clegge*, 8 Ala. 317; *Cunningham v. Fontaine*, 25 Ala. 644; *Harris v. Martin*, 39 Ala. 556; *Seymour v. T. H. Co.*, 81 Ala. 250. Could a stronger argument be made that judgments thus imperfectly entered are not void, but simply reversible?

The cases we have cited arose on appeals from judgments of circuit and chancery courts to this, the Supreme Court, while, in this case, the judgment complained of as imperfect was rendered by a justice of the peace. But this can make no difference in the principles

applicable to the two classes of cases.  No argument can be sound which would attempt to draw a distinction between defects of the kind we are considering, when found in the judgments of courts of record, and similar errors found in judgments pronounced by justices of the peace.  Such defect, or error, could not be simply a reversible error when found in the judgments of the higher and more learned tribunals, and yet, when committed by justices of the peace, absolutely destroy and annul the entire proceeding.  To declare such rule would establish an unauthorized distinction where no difference can be shown.  It would declare a severe rule of accuracy in proceedings before a justice of the peace, against the express language and policy of our statutes.  Instead of requiring great strictness in adjudicating justices' proceedings, our statute, (Code of 1886, § 3405), declares that on appeals from justices' judgments "all such cases must be tried *de novo*, and according to equity and justice, without regard to any defect in the summons, or other process, or proceedings before the justice."  This statute, without material change, has been the law of this State ever since December 14, 1819, when the act, "To regulate the proceedings in the courts of law and equity in this State," was approved.  Toulmin Dig., 186, § 36, on p. 189.  See also section 3, top of page 511, same book.  It has been many times passed upon in this court.  The statute, so long retained as a part of our judicial system, clearly shows that, in reviewing or passing upon justices' proceedings, only such defects as deprive parties of their just and equitable rights can be regarded as entitled to consideration.—*S. & N. R. R. Co. v. Seale*, 59 Ala. 608 ; *Abraham v. Alford*, 64 Ala. 281 ; *Burns v. Howard*, 68 Ala. 352 ; *Harsh v. Heflin*, 76 Ala. 499 ; *Solomon v. Ross*, 49 Ala. 198.

Let us present this argument in another form.  It can not be questioned that, in enacting this healing clause of the statute of 1819, the intention of the legislature was not to give greater potency and effect to errors committed in justices' proceedings, than were awarded to similar errors committed by courts of record.  On the contrary, in declaring that, on appeals from judgments of justices of the peace, the cases should be tried *de novo*, without regard to any defect in the summons or other process or proceedings, the almost univeral want of le-

gal knowledge in these inferior tribunals was had in contemplation. The manifest intention was not to deal severely with proceedings had before them. Hence it was declared that on appeals from their decisions only questions of "justice and equity" should be in inquired into, "without regard to any defect in the summons, or other process or proceedings," that may have occurred during the progress of the suit in that court. The argument of appellant is, that because the legislature has taken from it the right to have the error complained of reviewed and redressed on appeal to a higher court, this necessarily arms it, and all similar suitors, with the right to invoke the common law writ of *certiorari;* the contention being that to deny to it this writ is to withhold from it all, redress for this manifest error.

What is common law *certiorari*, and in the absence of statute, what relief can be granted under it? "It is not a writ of right, except when made so by statute, or when issued at the instance of the sovereign power. * * It will not be granted unless required to do substantial justice. * * It does not lie when an appeal, writ of error, or other mode of review is given. * * This writ does not. lie to correct mere irregularities in the proceedings of the inferior jurisdictions."—3 Amer. & Eng. Encyc. of Law, pp. 63-4; 2 Wait Act. & Def., 136-7; *City Council v. Belser*, 53 Ala. 379. "The judgment on the hearing is that the proceedings below be either quashed or affirmed in whole or in part."—3 Amer. & Eng. Encyc. of Law, 66; *Town of Camden v. Bloch*, 65 Ala. 236; *McAllilley v. Horton*, 75 Ala. 491. "But a writ of common law *certiorari* can only be availed of to review erroneous decisions or proceedings of inferior courts or tribunals in cases where there is no other available remedy, and where otherwise injustice will be done."—2 Wait Act. & Def., 134-5; *Dean v. State*, 63 Ala. 153. In the new work, Harris on *Certiorari*, § 2, speaking of the grant of this writ, that author says: "The application is addressed to the sound judicial discretion of the judge or court, who may grant or refuse it as to him may seem proper and right, upon the facts of the particular case as shown by the petitioner." Before the statutory amendment, there was, under this common law writ, no power to correct or amend imperfections or defects. The judgment must be either an affirmance, or a quashal.

We have stated the principles which govern the common law writ of *certiorari*, its limits, and the relief obtainable under it. Those principles remained the law of Alabama, at least until February 29, 1879, when the law was changed by statute approved that day. Sess. Acts of 1878-79, 150; Code of 1886, § § 3158-9. Before that time the healing remedial statute of 1819 had been in force near sixty years. During all that time the defect complained of in this case was irremediable by process of appeal to a higher court. If the argument of appellant be sound, during all those years the common law writ of *certiorari* was open to parties aggrieved by imperfect entries of judgments in justices' courts; open to them solely because the legislature, in attempting to heal such defects, had denied to suitors the right to avail themselves of them by process of appeal to a court of record. This is so, because in the absence of that statute, a party thus aggrieved would have had a remedy by appeal—an available remedy without resorting to this extraordinary writ—and hence not have been entitled to common law writ of *certiorari.—Bryant v. Stearns*, 16 Ala. 302; *Benton v. Taylor*, 46 Ala. 388; *Dean v. State*, 63 Ala. 153; *Crowder v. Fletcher*, 80 Ala. 219; *Faust v. Mayor &c. of Huntsville*, 83 Ala. 279; *A. G. S. R. R. Co. v. Christain*, 82 Ala. 307, and many authorities cited. Can it be inferred—is it logical to infer—that because the legislature interdicted the right to revise such errors or mistakes on an appeal to a higher court, they conferred the right to resort to common law *certiorari* in such conditions? That inflexible writ, which, during all that time, could only end in affirming the judgment of justices of the peace, or in declaring them null and quashing them? Can remedial legislation lead to such destructive results as this? It is not my intention to comment, at this time, on the act approved February 29th, 1879. This case may be disposed of without any reference to it. The judgment which gave rise to this proceeding was rendered by the justice March 23, 1888. Soon afterwards—March 30th, 1888—the defendant corporation, the Independent Publishing Company, filed a written motion before the justice, "to set aside the judgment," on the following grounds: "That said judgment was by default, and no proof was made of the service of the process, and that, therefore, said judgment was

void. Said judgment was by default, and was entered and rendered without proof being made that the person upon whom the summons and complaint were served was at the time of the service such officer or agent of the company as process could be served upon. Wherefore said judgment is void." The justice overruled this motion.

It will be observed that in this motion it is not denied, but is impliedly admitted that there was service of the summons, and that it was served on the proper person. The only complaint is that no proof was made of the service, and for that reason it was alleged that the judgment was void. In the sworn petition for *certiorari*, filed April 4, 1888, the defect complained of is thus expressed: "Petitioner avers that said judgment was render ed by default, and without any proof of service upon said corporation, as the law directs and requires; and petitioner avers that it did not enter any appearance in said cause, by attorney or otherwise, and petitioner further avers that no summons was served upon any officer or agent of said company as required by law." We may well inquire, why this difference of language between the motion made before the justice to set aside the judgment, and the sworn application to the court for the writ of *certiorari*? In the motion, the complaint was, not that there had been no service, but that no proof had been made of the service. Was not that an implied admission that service had been made? Nor does the application for the writ deny categorically, or by fair interpretation, that service had been made. Its language is, "petitioner further avers that no summons was served upon any officer or agent of said company as required by law." Is this a denial that service had been made? Is it not simply an averment that service was not made in a lawful manner, thus undertaking to aver a legal conclusion, without stating wherein it fell short of legal requirements? If the last four words—"as required by law"—had been omitted, the sentence would be complete, and would contain a denial that any officer or agent of the company had been served or notified. The averment is insufficient, and would be bad in any form of pleading.—18 Amer. & Eng. Encyc. of Law, 567 ; 2 Brick. Dig. 332, § 32.

It is a cardinal rule in granting or withholding com-

mon law *certiorari*, as has been already said, that it "is not a writ of right, except when made so by statute, or, when issued at the instance of the sovereign power; but it rests in the sound discretion of the court to grant or refuse it under the circumstances of the case. It will not be granted, unless required to do substantial justice."—3 Amer. & Eng. Encyc. of Law, 63; *Duggen v. McGruder*, 12 Amer. Dec. 527, and elaborate note; *French v. Town of Barre*, 58 Ver. 567; *State ex rel. v. Kemen*, 61 Wis. 494; *Cobb v. Lucas*, 15 Pick, 1 and 7; *Hyslop v. Finch*, 99 Ill. 171; *Gager v. Supervisors*, 47 Mich. 167.

The circuit court dismissed the *certiorari*, in response to the motion made therefor, and it is our duty to presume that he rightly ruled, unless error is affirmatively shown. In Harris on *Certiorari*, § 15, is this language: "Where the writ is applied for, and it appears by the showing made by the applicant that no injustice has been done, or is likely to be done, the writ should be refused; although there may be irregularity in the proceedings." Section 55: "The issuance or the refusal to issue the common law writ of *certiorari* is a matter entirely within the discretion of the court or judge to whom the application is made, and the courts of New York adhere to this rule with commendable tenacity; and when the Supreme Court exercises this discretion, either in refusing to grant the writ, or in quashing the same, the discretion will not be reviewed on appeal." Section 138: "But in the exercise of that discretion the court will examine all the circumstances, and if it appears that substantial justice has been done, without violating any important rules of proceedings, they will refuse to grant the *certiorari*, although there exist some technical or formal errors and unimportant departures from the regular rules of practice. And upon such inquiry the court may receive extrinsic evidence, not for the purpose of contradicting the record—if that contains affirmative defects, it is incurable—but to supply omissions, and to show that there was a more perfect compliance with the rules of law than the record shows, and that real justice has been done between the parties." Section 81: "This motion [a motion to dismiss] may be interposed at any stage of the proceedings in the superior court, that court having jurisdiction of its own writ, and having a discretion to grant or refuse the writ; it is a continuing discretion

[Independent Publishing Co. v. American Press Association.]

over the writ, and the court may at any time before final judgment quash, dismiss, or supersede the writ."

The principles last above quoted are fully sustained by decisions in Massachusetts and New York, two States confessedly among the foremost in reputation for judicial eminence. I think them alike conservative and sound, and believe they furnish a precedent it would be wise to follow. I think it would be eminently safe for us, like Massachusetts, to hold that on trials under the writ of common law *certiorari*, proof may be received, not to disprove the truth of recited facts in the return made, "but to supply omissions and to show that there was a more perfect compliance with the rules of law than the record shows."

While this proceeding in *certiorari* was pending in the circuit court, the justice of the peace who had rendered the judgment attempted to remedy the imperfection in the judgment entry, but it does not appear that any notice was given to the Independent Publishing Co. of such intended action. He did amend the entry on his docket by causing it to affirm that the summons "was served on R. E. Pettus, president of the Independent Publishing Company." He also so altered it as to make it declare that on the day set for the trial—March 23, 1893—the Independent Publishing Company appeared by counsel, and moved for a continuance on account of the absence of M. H., its leading counsel. He certified these amended entries to the circuit court, but the court disallowed the amended return, possibly because the amendment had been made without notice to the adversary party.

The circuit court dismissed the *certiorari*, in response to a motion made therefor, but the particular ground stated above was not specially assigned as a reason therefor. It is, however, embraced in the second of the grounds—"Because said writ of *certiorari* was granted in a case not authorized by law." As I understand and interpret the language of the petition, it fails to make a case which calls for a writ of common law *certiorari*.

True, we have a statute which requires that when demurrers are interposed, special grounds must be assigned, and only the grounds assigned can be considered. We have no such statute in reference to motions. And when a motion is granted which would have been

justified on any ground, or for any reason, it is not material to inquire whether the correct, or, indeed, any reason was assigned for invoking, or granting the court's action. A correct order made will be permitted to stand, even when an insufficient, or false reason is given for the making of it.—*Green v. Casey*, 70 Ala. 417; *Sessions v. Boykin*, 78 Ala. 328.

My own opinion is, that the circuit court, in the exercise of a sound discretion, rightly dismissed the *certiorari* for the following reasons :

*First.* The petition does not aver positively, or by fair interpretation, that the summons was not in fact served, and served on the proper agent, or officer of the defendant corporation.

*Second.* It is not claimed or averred that the defendant did not have notice of the suit, and of the time set for its trial ; nor is it denied that defendant owed the debt for which the judgment was ·rendered. These should have been averred positively ; and in the absence of such positive averment the petition failed to make a case for which the judge in his discretion should have awarded or entertained a *certiorari*.

*Third.* If the judgment was unjust, or for too great an amount, the defendant could have obtained ample redress by an appeal to a higher court, when and where he would have been entitled to a trial *de novo* on the merits of the case.

*Fourth.* I maintain that the statute of 1819—Code of 1886, § 3405—had a broader policy and aim than simply to prescribe that appeal causes from justices' judgments should "be tried *de novo* and according to equity and justice, without regard to any defect in the summons or other process or proceedings before the justice." Its purpose was to deal charitably with that necessary body of magistracy, because of their known, or presumed, want of knowledge of the law, and to overlook all defects in their proceedings, provided the ends of justice and equity have been accomplished. I can not assent to the proposition that because the legislature took away .all right to raise such questions on appeal from justices' judgments, they thereby intended to arm, and did arm suitors in those inferior courts with the power, by the supervisory writ of *certiorari*, not to reverse and correct the erroneous rulings, but to quash and annul them, for

[Independent Publishing Co. v. American Press Association.]

errors which would only suffice to reverse the judgments of the higher courts.

It is objected to the summation of principles I have declared, Nos. 1 and 2, that the defect in the petition for *certiorari* were not assigned, in the motion, as grounds for quashing or dismissing the *certiorari*, and that for this reason the circuit court erred in granting the motion. I think there is nothing in this objection. When an order is made by the court which is correct in itself, having a sufficient fact to rest on, it does not matter whether any reason, or even an insufficient or erroneous reason, is assigned for the ruling. This is the rule when the order is granted. It will not be reversed.—*Green v. Casey*, 70 Ala. 417; *Sessions v. Boykin*, 78 Ala. 328; *Ezell v. The State, ante*, p. 101.

When, however, the motion is denied, or overruled, the rule is different. The court is not bound to look beyond the grounds specified in the motion, in search of some ground on which to base affirmative action. If the specified grounds contain no merit, the court need not look beyond them, but may overrule the motion. In such case it is the fault of the movant that he does not direct the attention of the court to the true ground which entitles him to relief. To hold otherwise might lead to a reversal on a ground which the court never considered, or even thought of.—*Sessions v. Boykin*, 78 Ala. 328; *Baker v. Boon*, 100 Ala. 622; 3 Brick. Dig. 389, § 364.

If relief be granted in this case, it will establish a precedent which, in my judgment, will lead to very disastrous results. There is no estimating the number of judgments rendered by justices of the peace, which are so incomplete in some respects as that under the principles of the common law writ of *certiorari*, if permitted to be invoked in their severity, they would be quashed. Shall we establish such precedent? Can we afford to announce such doctrine as the solemn judgment of this court?

Some expressions in *Memphis & Charleston R. R. Co. v. Brannum*, 96 Ala. 461, are not reconcilable with some expressions in the foregoing opinion. The correctness of the judgment pronounced by this court in that case need not be controverted. The suit was brought against Morrow, agent, and the judgment was by default, and against the railroad company; an entire change of par-

ties.   The error was irremediable, and the judgment fatally defective.   The proceedings were rightly quashed. 1 Brick. Dig. 113, § 68.

My own opinion is that the judgment of the circuit court ought to be affirmed.

HEAD, J., expresses his own views; and the remaining members of the court concur in the opinion of Coleman, J.

COLEMAN, J.—The suit began in a justice court against appellant, a corporation.   The return made by the officer executing the summons is as follows:   "Executed by summons on Mar. 15th, 1888."   Signed, "J. Watkins, Con."   Judgment by default was rendered by the justice against the corporation, but there is no entry showing who was served with notice, or that the person served, if any, "was president or other head thereof, secretary, cashier, station agent, or any other agent thereof," as required by section 2657 of the Code.   The defendant applied by petition to the circuit court for the common law writ of *certiorari*, and prayed that the judgment be quashed.   There are many decisions in our court where from like irregularities cases were brought to this court by appeal, and in every instance, unless the defect was remedied in the trial court by amendment *nunc pro tunc*, the case was reversed and remanded, although the error was apparent on the record.   On appeal to this court a judgment merely reversing the cause was the proper judgment.   See following authorities: *Lyon v. Lorant*, 3 Ala. 151; *W. & C. R. R. Co. v. Cole*, 6 Ala. 655; *M. & C. R. R. Co. v. Whorley*, 74 Ala. 264; *Fire Ins. Co. v. Fowler*, 76 Ala. 373; *Cen. R. R. & B. Co. v. Carr*, *Ib.* 388.   In no case reported, which we have been able to find, where the defendant resorted to the common law writ of *certiorari* to redress the error, was there a judgment of reversal.   The proper and only judgment which could be rendered where the cases were brought up by the common law writ of *certiorari*, instead of by appeal, would be a judgment of affirmance, or one quashing the judgment. The cases cited in which the remedy invoked was by appeal are not authority to show that a like judgment of reversal merely would have been rendered, if the common law writ of *certiorari* had been invoked.

It needs no argument to show, in fact the proposition

is conceded, that the remedy by the common law writ of *certiorari* was available to reach such a defect as that which exists in the present case. At common law and by the practice of this court, as we have said, the judgment on the writ of *certiorari* would be to quash or affirm the judgment. The question then is directly presented, whether section 3158, Chapter 13, of the Code changes entirely the principles of pleading, rules of evidence, and principles of procedure, which have always applied to the common law writ of *certiorari*, and to permit an issue of fact to be made up in the supervisory court to supply an omission in the record proceedings, or to show that the record recitals of the court in which the judgment was rendered are untrue. Chapter 13, which contains section 3158 of the Code, referred to above, is one of general provision, and has no more reference to procedure in courts of justices of the peace, or courts of limited jurisdiction, than in the circuit or other higher courts of record of general jurisdiction. It seems manifest, that if the judgment had been rendered in the circuit court, upon a like return made by the sheriff, and the defendant had applied to this court for a writ of *certiorari* to bring up the record, this court would have ordered the judgment and proceedings to be certified. Upon such an order from this court, would it be possible for the plaintiff to make an issue of fact and have the same tried and determined upon parol evidence in the court below? That court could have no such power. Its duty would be to comply with the order of this court, and send up the record as it existed. True, all courts have the authority to amend its records *nunc pro tunc* in proper cases, but no issue of fact to be established by extrinsic parol proof would be permissible, nor could an amendment *nunc pro tunc* be made upon parol proof. It seems clear that the construction contended for under section 3158 of the Code can not be applied to the common law writ of *certiorari*, by which a defect apparent on the record in the circuit or other higher courts is sought to be reached and remedied by a writ from this court. We think there is another reason fatal to the contention. The only evidence of the execution of the summons is the return of a proper officer. Although under proper circumstances a return by the officer that a summons has been personally served may be falsified, in no case will a personal judg-

ment be upheld, in a direct proceeding questioning its validity, in the absence of record evidence, showing that the court had jurisdiction of the defendant. A valid personal judgment can not be rendered without record evidence that the defendant has been notified by a proper officer in a legal way. The return of the proper officer to this effect is sufficient. An appearance by the defendant or by counsel in court, of which there is record evidence, is sufficient, but parol proof can not be received to establish either the one or the other. Moreover, the court in which the proceedings were had is the only court, which has the authority to amend its record *nunc pro tunc*. Without proper service or a legal appearance, of which there is record evidence, the court is without jurisdiction of the person. To give to section 3158 the construction contended for would be to strike down all these elementary principles and safeguards of the law; and have the effect to permit the circuit court, upon parol proof, to amend the records *nunc pro tunc* of the justice court, and this court to amend the records of the circuit court upon parol evidence. It amounts to this, and nothing less. Of course, it must be understood, that we are treating of the common law writ of *certiorari* granted in this case for error apparent, which justified its issuance, and not to the statutory writ of *certiorari*, by which a cause may be brought from a justice court to the circuit court, after the five days in which an appeal may be taken have expired, for any sufficient cause showing why the appeal was not prosecuted within the time fixed by the statute. Upon a sufficient showing, without reference to any error of record apparent, the writ may issue, and the case be brought up. It is tried under the statute *de novo*. But this section of the Code—3405—can have no reference to the proceedings under the common law writ of *certiorari*, which is granted only in proper cases for error of record apparent, upon which the only proper judgment is to affirm or quash the proceeding. This question has been directly passed upon by this court.—*Ex parte Madison Turnpike Co.*, 62 Ala. 94; *Town of Camden v. Bloch*, 65 Ala. 236.

It has never been held in this State, that a trial *de novo*, upon the merits of the case, or extrinsic evidence, was permissible to supply an omission or cure an irregularity apparent upon the record in a case brought up to

a superior court by the common law writ of *certiorari*. On the other hand, the reverse has been adjudicated and declared to be the law. The very question arose in the case of *The Town of Camden v. Bloch*, 65 Ala. 236. Other cases could be cited. We do not feel authorized to give the statute this construction, and more especially as section 3166 contained in Chapter 13, of the Code, provides, ''The common law, as now in force in this State, touching any of the matters embraced in this chapter, is not repealed, but left in full force.''

If it be conceded that a person has no right to the common law writ of *certiorari*, when he has a complete remedy by appeal or by the statutory *certiorari*, we hold in the present case, that rule would not apply, for this reason : For the defect in the record, at common law, the petitioner had the right to have the judgment of the supervisory court quashing the judgment of the lower court. He was not required to resort to any supposed remedy, the result of which necessarily destroyed this legal right. The common law writ of *certiorari* was the only remedy left to him, by which the defect in the judgment could be reached, and a judgment quashing it could be rendered. If he resorted to an appeal, he made himself a party, brought himself into court, and after being compelled to secure the debt by his appeal bond in order to obtain the appeal, must then submit to a trial *de novo*, without having a judgment, void for want of legal notice, quashed.

So long as the return made by the officer executing the writ of summons in the justice court remained as it was, and there was no proof showing the party served was a person mentioned in the statute, as a proper person upon whom service could be rendered, it is apparent upon the record that the justice court did not have jurisdiction of the defendant, and the judgment was improperly rendered. There was no power in the circuit court to amend the record brought up by the common law writ of *certiorari*, or to hear parol proof to supply the omission or cure the defect. The circuit court should have granted the petition, and quashed the judgment of the justice court. The same principle was settled in the case of *Memphis & Charleston R. R. Co. v. Brannum*, 96 Ala. 461, and we adhere to the conclusion reached in that case.

As to the insufficiency of the petition, and the discretionary powers of the court to grant or refuse the writ, we have but to say the petition, in our opinion, is not subject to criticism for insufficiency. A complete transcript of the proceedings before the magistrate is made a part of the petition, and was before the court, and the return of the constable shows affirmatively a want of proper execution of the summons, and the judgment fails to show any proof of service upon the defendant. Looking at the entire proceedings and judgment before the magistrate, there is no evidence to show that the court had jurisdiction of the person of the defendant, or any authority to render the judgment.

As to the discretion of the court to grant or refuse the writ, this discretion was exercised when the writ was issued. After the case had been brought before the court, the petition was for adjudication upon its merits, as shown by the transcript and record from the magistrate's court.

In the case of *Myra Walden v. The Imperial Life Ins. Co.*, a corporation, appealed from Dale circuit court, the record shows that Myra Walden sued the defendant, a corporation, upon an insurance policy. The return of this sheriff is as follows : "Executed by serving a copy of the within summons and complaint on defendant this 7th day of June, 1892." At the Spring term 1893, the plaintiff obtained judgment by default for $2,333.35. At the following term of the circuit court, the defendant appeared and moved the court to set aside and annul the judgment, because the defendant had not been served with a copy of the summons and complaint as *required by law*, and had no notice of the pendency of the suit. This motion was granted by the court, and the judgment set aside and annulled. The plaintiff appealed the case to this court for revision, and submitted also a motion for the writ of *mandamus* to require the circuit court to set aside and annul the order by which the judgment in favor of the plaintiff had been set aside and annulled, and to re-instate the judgment. Upon motion of the appellee this court dismissed the appeal, and denied the motion for the writ of *mandamus*. The facts of the case cited and the ruling of this court, adjudicated the questions before us. If the judgment by default was merely irregular and not void, the circuit court had

no authority at a subsequent term or any other term, to vacate and annul it. If the judgment was merely irregular, this court would have entertained the appeal and reversed the case. On the other hand, if the judgment was merely irregular and not void, and the circuit court had no jurisdiction, at a subsequent term, to set it aside and vacate it, and if appeal would not lie, then the writ of *mandamus* was the proper remedy, and the circuit court would have been required to reinstate the judgment. The very fact that this court held that neither an appeal nor a *mandamus* would lie, necessarily determined the proposition, that the judgment in default was void, and that upon its annulment, there was no final judgment which would support an appeal. The questions are precisely the same principle in both cases. The case of *Myra Walden v. Imperial Life Insurance Co.* has not been and will not be reported, but it is an adjudicated case, and as binding as any other decision, and in our opinion, is right on principle. It was decided by a full court, all concurring.

There was no demurrer or objection for insufficiency, and no motion to dismiss or quash the writ as having been improvidently granted. No such question was before the court. The writ was dismissed for some one of the reasons assigned in the motion, and there was but one entitled to any consideration and that is, that the Publishing Company had the right to appeal. We have shown that this motion ought not to prevail. This court will, therefore, render the judgment the circuit court should have rendered, and set aside and vacate the judgment rendered by the justice of the peace.

Reversed and rendered.

HEAD, J.—I concur in the opinion of the Chief Justice, that a person seeking, by common law *certiorari*, to avoid a judgment obtained against him, in a case like the present, should show, in his application for the writ that he has a meritorious defense to the action which he had no opportunity to make. My position is this : *Certiorari* is a discretionary writ designed to accomplish justice ; and although the proceedings of the inferior tribunal, sought to be reviewed, which resulted in the judgment complained of, abound in errors and irregularities which it is the nature of this remedy to redress,

yet, if it should appear that the judgment sought to be avoided is manifestly the same as would have been obtained had the proceedings been strictly legal and regular, the court would not lend its aid, by this discretionary writ, to set it aside. It would be opposed to the purpose for which the remedy was invented, (which, as I. have indicated, is to enforce substantial justice and prevent injustice), to permit it to be used to avoid proceedings which involve no real detriment to the party moving. .This being the spirit and purpose of *certiorari*, I think the applicant for it, in a case like this, should show, in his application, under oath, to the judge to whom he applies, not only the errors complained of, but, as terms upon which the discretion of the judge will be exercised in favor of awarding the writ, that he has a meritorious defense which he had no reasonable opportunity to make. This is the rule, as I understand it, which equity has adopted when her courts are invoked to vacate judgments as having been unlawfully obtained; and the same spirit pervades our several statutory provisions for reviving litigation once determined by final judgment. If it is omitted, the writ of *certiorari* will be the efficient means of setling litigation on foot and accomplishing the vacation of judgments for irregularities which wrought no substantial injury whatever—ends opposed to the spirit of the remedy. I think the judge, in granting the writ without this showing, grants it improvidently. Nor does the discretion stop with the judge who awards the writ. When the proceedings come on before the court, the court, if moved thereto, may inquire and determine whether it was improvidently granted or not, and finding that it was, may quash it for that reason. In the present case, if my view is right, the petition is defective, for non-conformity to the rule I express. The writ should not have been granted in the first instance, and being granted, the court, if it had been moved thereto, should have quashed it. But no such motion was made. The parties tried the cause upon the merits of the proceedings before the justice of the peace, brought up for review in return to the *certiorari*. The question, therefore, as to the sufficiency of the showing made in the petition for the writ, in respect of the matter above discussed, is not before us for revision. There was a motion in the

circuit court to quash the writ which was granted, but that motion went to the merits or validity of the judgment sought to be set aside, and not to the quashing of the writ as having been improvidently granted on account of the omission I have suggested. The writ being retained for hearing and disposition upon its merits, I concur in the opinion of Justice Coleman as to the rules and principles which govern its disposition.

It is insisted, in the opinion of the Chief Justice, that a judgment against a corporation, rendered upon the sheriff's or constable's return, without proof being made before the court that the person served was, at the time, an agent or officer of the corporation, authorized by law to receive service, is *voidable* merely, and not void. But for the peculiar rule obtaining in Alabama, and no where else, of which I am aware, which requires such proof to be made before the court, in aid of the officer's return, such a status as a return of service of mesne process, voidable on the face of the record, is not conceivable. The purpose of service, and return thereof, is sole. It is to confer jurisdiction of the person of the party sued upon the court. When the return is made, it is the record upon which rests the evidence of the court's jurisdiction of the person. It imports the same verity, and is as conclusive, as any other part of the record. To confer jurisdiction the return must, of course, show with reasonable certainty the facts, and all the facts, essential to such jurisdiction. If it fails in this, even in the slightest material particular, the court can not accept it as evidence of jurisdiction. It is a nullity. A judgment by default rendered upon it is void upon the face of the record. On the other hand, if it shows all the essential facts, jurisdiction is conferred, and the sole purpose accomplished. There is no middle ground. The return, on the face of the record, is, necessarily, complete and perfect, or an absolute nullity. Whether the suggestion of the Chief Justice that the omission of the record to show that the peculiar Alabama rule in respect of the proof required to be made in aid of the return, was complied with, renders the judgment voidable merely, I do not think it necessary to decide in this case ; for, I understand, the writ of *certiorari* is grantable, as well when the court proceeded irregularly to judgment, as when it was without jurisdiction. It is a question of much im-

portance, and I prefer to express no opinion upon it until it is expressly raised and argued. I desire, however, as the subject has been discussed in the opinions of my brothers, to make some observations, as merely suggestive, upon the general law of the service upon corporations and judgments thereon, and to refer to the origin and growth of the Alabama rule requiring the return to be aided by other proof of its verity. Under the general law prevailing everywhere else than in this State, (unless changed by statute), there is no distinction, in the verity accorded a sheriff's return in suits against corporations and against individuals. In the former, if there be no statute prescribing the particular officers or agents upon whom the service shall be made, it must be made upon the head or principal officer of the corporation.—1 Tidd's Prac., marg. p. 121, and notes ; Angell & Ames on Corporations, (2d Ed.), 508, note ; Morawetz on Corp., § 521. If regulated by statute, the service must be upon the officer or agent, so provided. The return must show clearly upon what officer or agent service was made and the character of the office or agency. The time, place and manner of service should be clearly stated.—22 Am. & Eng. Encyc. of Law, 184, *et seq.*, and notes. A return thus complete, imports absolute verity, and is just as unassailable as a perfect return in case of an individual. By it the court acquires jurisdiction of the person, and its judgment is conclusive If the return is untrue ; if the person returned as served was not in fact the officer or agent of the corporation, as represented, the remedy of the corporation, if injured, is against the sheriff ; and sometimes equity lends its aid to relieve.—1 Tidd's Pr. (Am. Notes,) p. 122 ; 22 Amer. & Eng. Encyc. of Law, 192, *et seq.* and notes. Extraneous evidence will not be received to aid the return.—See note, 1 Tidd's Pr., 122, *supra.*

But we come to the Alabama rule. It began with the case of *Planters & Merchants Bank v. Walker*, Minor, 391. By statute, a bank was liable to summary judgment on motion for the amount of its bank notes, payment of which had been refused on presentation. The statute made service of notice of the motion on the president or cashier of the bank sufficient to make the bank a party defendant. The sheriff returned, in proper form, that he had served the notice on "Wm. G. Hill, cashier of the

[Independent Publishing Co. v. American Press Association.]

bank.'' The court, by Judge Gayle, said: ''By the
record, it is not shown that it appeared to the satisfact-
ion of the court that Hill was such cashier. It seems
to us that the official duties of the sheriff did not require
him to certify in his return who was the cashier. His
return proved only that service was made on a particular
individual, not that such individual was cashier. He
being only an agent of the bank, his identity must be
ascertained, as other facts are, by proof. The sheriff
might serve the notice on a stranger having no connec-
tion with the bank, and judgment might thus, on motion,
be rendered against the corporation without an oppor-
tunity of making defense.'' No authorities are cited.
Judge Crenshaw dissented. He said: ''I concur with
the majority of the court, in thinking that, as this is a
summary and extraordinary remedy, the record should
show that the plaintiff in the motion had complied with all
which the statute requires to entitle him to the remedy.
But I think that the plaintiff has done all this in the
present case. I can not think it was contemplated by
the statute that the plaintiff should prove that the per-
son on whom the notice was served was the cashier.''

The error of the conclusion of the majority, it seems to
me, obvious. It is not only opposed to the authorities
to which I have referred, which accord verity to the re-
turn showing service upon the proper agent of the cor-
poration, and which exclude extrinsic proof that such
person was not the agent, but to reason also. When a
suit is instituted jurisdiction of the person of the defend-
ant must, in some way, be obtained. The law charges
the sheriff or constable, as the case may be, with that
duty. That officer is thus authorized, and it is his offi-
cial duty, to investigate and ascertain who the defend-
ant—who the party intended to be sued—is ; to identify
him as the real defendant and serve the process upon
him ; and when he performs that duty and makes return,
in proper form, he thereby makes a record as unassaila-
ble as any record the judge can make. The evils of a
false return, suggested by Judge Gayle, may as readily
occur in a suit against an individual as a corporation.
Suppose a suit against John Smith, for instance, and
there are a dozen persons by that name in the county.
The sheriff, by mistake, serves the process on a John
Smith other than the person really sued, and returns

that he has served it upon the defendant, John Smith; upon which judgment is rendered. The judgment is conclusive upon the real defendant. The sheriff is responsible to him for the mistake; just as he would be, as if having a writ of arrest against John Smith, he arrests the wrong person, though bearing that name. He is bound to know who the party to the process is. In case of a corporation, the agent provided by law to receive service is, for the purpose of service, the defendant itself. The sheriff must and may identify him, just as he would an individual defendant, and there is no reason why the duty may not be well performed. But, again, suppose the rule laid down by Judge Gayle be sound. It results, logically, that a sheriff's return can not bring a corporation into court. The defendant can not be regarded as before the court, because the return itself is inefficacious to show that the person served, as agent, was in fact agent. The court must regard that he was not an agent. The rule necessarily, proceeds upon that presumption. Then, is it not manifest, that the proceeding instituted by the court, by which evidence is taken to prove that he was such agent, is purely *ex parte*? Can such a proceeding, to which the corporation is not a party, and hence without opportunity to be heard, to cross-examine the witnesses or introduce rebutting evidence, be binding on the corporation? If not, then of what value is the proof? What does it legally add to the verity of the return?

The rule was next declared in *St. John v. Tombeckbee Bank*, 3 Stew. 146, where Judge Crenshaw simply followed the former decision without further discussion.

It was next declared in *Lyon v. Lorant*, 3 Ala. 151, without discussion or the citation of authorities, but evidently following the former cases.

Then, in *W. & C. R. R. Co. v. Cole*, 6 Ala. 655; *Oxford Iron Co. v. Spradley*, 42 Ala. 24, and many subsequent cases down to the present day, it has been treated as the settled rule, upon the authority of these cases, without being discussed or questioned; until it must now be regarded as a settled rule of practice in this State. But, the question raised by the Chief Justice, whether the omission from the record of the required proof, renders the judgment void or merely erroneous and reversible, is an open question. Will it be regarded as an essen-

tial to jurisdiction, or will it be so tempered as to leave the sheriff's return efficacious to confer jurisdiction, and the rule itself one merely of practice, intended as a safeguard against mistakes of the sheriff, hence, failure to observe it a mere irregularity?